IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| KEITH CARROLL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No: |
| v. | ) |
| | ) |
| | ) |
| FIRST FINANCIAL FEDERAL CREDIT | ) |
| UNION ("First Financial FCU") | ) |
| | ) |
| Serve: Executive Director | ) |
|     In His/Her Official Capacity | ) |
|     First Financial FCU Headquarters | ) |
|     1215 York Road | ) |
|     Lutherville, MD 21093 | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

The above-named Plaintiff, Keith Carroll, by counsel, states as his Complaint against Defendant First Financial Federal Credit Union ("First Financial FCU"), the following:

### I.  JURISDICTION

1. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq*.

2. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1)-(3) because Defendant maintains a credit union locations in the greater Washington, D.C. metropolitan area, because a substantial part of the events or omissions giving

rise to Plaintiff's claim occurred in this District, which is also Plaintiff's residence, and Defendant has sufficient minimum contacts with Virginia to be subject to personal jurisdiction in this District.  In this connection, First Financial FCU's website states: "Our membership is extended to members of the immediate family or household of a First Financial eligible member; the eligible individual does not need to be a member of First Financial in order for family members to join."  Accordingly, membership in First Financial FCU is open to people outside of Maryland, including in Virginia and in this District.

## II.  THE PARTIES

3.  Plaintiff is an adult resident of this District.  Plaintiff is permanently blind and uses a screen reader in order to access the internet and read website content.  Despite several attempts to use and navigate First Financial FCU's website, www.firstfinancial.org, Plaintiff has been denied the full use and enjoyment of the facilities and services of firstfinancial.org as a result of accessibility barriers on firstfinancial.org.  The access barriers on firstfinancial.org have caused a denial of Plaintiff's full and equal access multiple times.  Similarly, the access barriers on firstfinancial.org have deterred Plaintiff from visiting First Financial FCU's credit union locations.

4.  Plaintiff is informed and believes, and thereon alleges, that First Financial FCU is a federal credit union with its principal place of business located in

Lutherville, Maryland. Plaintiff is informed and believes, and thereon alleges, that First Financial FCU owns and operates credit union locations in in the greater Washington, D.C. area in Maryland that are close in location to residents of Virginia in this District. The credit union locations constitute places of public accommodation. First Financial FCU's locations provide to the public important goods and/or services. First Financial FCU also provides to the public the firstfinancial.org website. Firstfinancial.org provides access to First Financial FCU's array of services, including a locator for the First Financial FCU facilities, information that enables a person without an account to learn what services First Financial FCU has to offer potential customers including descriptions of its amenities and services that enable a user to obtain general information about particular topics and specific information about what First Financial FCU offers, and many other benefits related to these facilities and services. The First Financial FCU locations are public accommodations within the definition of Title III of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181(7). Firstfinancial.org is a service, privilege, advantage, and accommodation of the First Financial FCU location. Firstfinancial.org is a service, privilege, advantage, and accommodation that is heavily integrated with these locations.

    5.    At all times relevant to the Complaint, First Financial FCU was acting through its agents, servants and/or employees.

## III. FACTUAL BACKGROUND

### Applicability of the ADA to Commercial Websites

6. The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

7. Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services contained thereon.

8. The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to: adding invisible alternative text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or

visually-impaired person using a screen reader.

9. Within this context, numerous federal courts have recognized the viability of ADA claims against commercial website owners/operators with regard to the accessibility of such websites.  *See, e.g.*, *Andrews v. Blick Art Materials, LLC*, -- F. Supp. 3d --, 2017 WL 3278898, at \*12, \*15-\*18 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Thurston v. Chino Commercial Bank, N.A.*, No. CV 17-01078 BRO (JCx), 2017 WL 3224681, at \*5 (C.D. Cal. July 27, 2017) (citing *Gorecki*); *Markett v. Five Guys Enterprises LLC*, No. 1:17-cv-00788-KBF, slip op. at 4-6 [ECF #33] (S.D.N.Y. July 21, 2017); *Gorecki v. Hobby Lobby Stores, Inc.*, No. 2:17-cv-01131-JFW-SK, 2017 WL 2957736 (C.D. Cal. June 15, 2017) (Walter, J.) (denying a motion to dismiss sought against ADA and California's Unruh Civil Rights Act claims) ("[T]his is a relatively straightforward claim that Hobby Lobby failed to provide disabled individuals full and equal enjoyment of goods and services . . . by not maintaining a fully accessible website.  There is nothing unique about this case, as federal courts have resolved effective communication claims under the ADA in a wide variety of contexts-- including cases involving allegations of unequal access to goods, benefits and services provided through websites."); *Gil v. Winn-Dixie Stores, Inc.*, No. 16-23020-Civ-Scola, -- F. Supp. 3d --, 2017 WL 2547242, at \*7 (S.D. Fla. June 13, 2017) (finding that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA by failing to maintain an accessible website after a non-jury trial); *Frazier v. Ameriserv Financial Bank*, Nos. 2:16-cv-01898-AJS (Lead Case), 17cv0031 [ECF #107], slip op. at 20 (W.D. Pa. Apr. 21, 2017) (denying a motion to dismiss an ADA

claim alleging an inaccessible commercial website); *Frazier v. Churchill Downs Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:16-cv-0007 (Member Case) [ECF #107] slip op. at 20 (W.D. Pa. Apr. 21, 2017) (same); *OmahaSteaks.com, Inc. v. Access Now, Inc., et al.*, No. 8:17-cv-00060-LSC-CRZ [ECF #9-1] (D. Neb. Apr. 17, 2017) (consent decree); *Access Now, Inc., et al. v. Omahasteaks.com, Inc.*, Nos. 2:16-cv-01898-AJS (Lead Case), 2:17-cv-00269-AJS (Member Case) [ECF #99] (W.D. Pa. Apr. 11, 2017 (same); *Gil v. Winn-Dixie Stores, Inc.*, -- F. Supp. 3d --, No. 16-23020-Civ-Scola, 2017 WL 2609330 (S.D. Fla. Mar. 15, 2017) (denying a motion for judgment on the pleadings sought against an ADA claim alleging an inaccessible commercial website); *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 3561622, at *12-*20 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *1-*3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15- cv-30024-MGM, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.)(recommending the denial of a motion to dismiss or stay predicated on the primary jurisdiction doctrine), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, Case 3:15-cv-30024-MGM, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.); *Edward Davis v. Orlando Wilshire Investments Ltd., et al.*, No. 5:15-cv-01738-MWF-KK, slip op. at 10 [ECF #17] (C.D. Cal. Nov. 2, 2015) (Fitzgerald, J.) (denying motion to dismiss in a website accessibility case) ("the Court concludes that the Complaint sufficiently

alleges that the inaccessibility of the Website impedes the full and equal enjoyment of the Hotel."); *Nat'l Fed'n of the Blind v. Scribd, Inc.,* 98 F. Supp.3d 565, 576 (D. Vt. 2015) (denying a motion to dismiss an ADA claim against a commercial website operator); *James Patrick Brown v. BPS Direct, LLC, et al.*, Case No. LACV 14-04622 JAK (JEMx) slip op. at 4-7 [ECF #30] (C.D. Cal. Oct. 6, 2014) (Krondstadt, J.) (denying the defendant's motion to dismiss while relying on the *Target* decision as "persuasive", and holding "the Complaint does allege that Bass Pro Shops is a chain of brick-and-mortar stores and that BassPro.com is a website providing information about Bass Pro Shops products, offers, and locations.... [and that] a nexus could be established here through discovery."); *Penney v. Kohl's Dep't Stores, Inc., et al.*, No. 8:14-cv-01100-CJC-DFM [ECF #12] slip op. at 3 (C.D. Cal. Sept. 23, 2014) (Carney, J.) (denying a motion to dismiss and stating, "Thus, the Complaint states plausible facts that establish the requisite nexus between the challenged service and the place of public accommodation."); *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public"); *id.* at 200-01 ("[T]he legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology.") (quoting H.R. Rep. 101-485(II), at 108 (1990)) ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the

rapidly changing technology of the times."); *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet to determine what standards to apply to websites and stating, "The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."); *Nat'l Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."); *id.* at 953-54 ("consistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation. Further, it is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's "full enjoyment" of services or goods of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. *See* 42 U.S.C. § 12182(b)(1)(A)."); *cf. Hindel v. Husted*, No. 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (granting a motion for preliminary injunction against the Ohio Secretary of State based on the accessibility of the state's website under Title II of the ADA and requiring conformance with WCAG 2.0 Level A and AA Success Criteria).

## **The Inaccessibility of First Financial FCU's Website to the Visually-Impaired**

10. First Financial FCU offers the commercial website, firstfinancial.org, which provides, among other things, information concerning the First Financial FCU locations it operates, information and descriptions of its amenities and services, privileges, advantages, and accommodations, and allows users to find the locations for them to visit.

11. Based on information and belief, it is First Financial FCU's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to firstfinancial.org. Due to First Financial FCU's failure and refusal to remove access barriers on firstfinancial.org, Plaintiff and other blind and visually impaired individuals have been denied equal enjoyment of and access to the First Financial FCU locations and to the other services, advantages, privileges, and accommodations offered to the public through firstfinancial.org.

12. First Financial FCU denies blind individuals equal enjoyment of and access to the services, privileges, advantages, and accommodations and information made available through firstfinancial.org by preventing them from freely navigating firstfinancial.org. Firstfinancial.org contains access barriers that prevented free and full use by blind persons using screen reading software.

13. Firstfinancial.org's barriers are pervasive and include, but are not limited to, the following: (1) Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link. Alternative Text is

9

invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead a text box will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired First Financial FCU customers are unable to determine what is on the website, browse the site, look for the First Financial FCU locations, check out Defendant's amenities, and/or determine which location to visit; (2) Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users; and (3) Empty or missing form labels which presented a problem because if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels provide visible descriptions and larger clickable targets for form controls.

14. Due to the inaccessibility of firstfinancial.org, blind and otherwise visually impaired customers who use screen readers are hindered from effectively browsing for First Financial FCU's locations, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users. If firstfinancial.org were accessible, Plaintiff could independently and privately investigate First Financial FCU's services, privileges, advantages, and accommodations and amenities, and find the locations to visit via First Financial FCU's website as sighted individuals can and

do.

15. Despite several attempts to use firstfinancial.org in recent months, the numerous access barriers contained on First Financial FCU's website have denied Plaintiff's full and equal access, and deterred Plaintiff on a regular basis from accessing First Financial FCU's website. Similarly, based on the numerous access barriers contained on firstfinancial.org, Plaintiff has been deterred from visiting First Financial FCU's physical locations that Plaintiff may have located by using firstfinancial.org.

## COUNT I: Violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

16. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

17. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

18. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with

disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

19. First Financial FCU's locations are "public accommodations" within the meaning of 42 U.S.C. § 12181 *et seq*. First Financial FCU generates millions of dollars in revenue from the sale of its amenities and services, privileges, advantages, and

accommodations in Virginia through its nearby locations in Maryland and related services, privileges, advantages, and accommodations and firstfinancial.org. Firstfinancial.org is a service, privilege, advantage, and accommodation provided by First Financial FCU that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that First Financial FCU made available to the non-disabled public. First Financial FCU is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that First Financial FCU denies visually-impaired customers the services, privileges, advantages, and accommodations provided by firstfinancial.org. These violations are ongoing.

20. First Financial FCU's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* in that: First Financial FCU has constructed a website that is inaccessible to Plaintiff; maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

21. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

WHEREFORE, Plaintiff prays for judgment against Defendant First Financial Federal Credit Union for preliminary and permanent injunctive relief pursuant to 42

U.S.C. § 12188(a)(1) and (2), further equitable relief, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

        Respectfully submitted,

        /s/ Thomas E. Strelka

        Thomas E. Strelka, VA Bar No. 75488
        L. Leigh R. Strelka, VA Bar No. 73355
        STRELKA LAW OFFICE, PC
        119 Norfolk Avenue, SW,
        Warehouse Row, Suite 330
        Roanoke, Virginia 24011
        Phone: (540) 283-0802
        thomas@strelkalaw.com
        leigh@strelkalaw.com

        Scott J. Ferrell, Esq.
        Victoria Knowles, Esq.
        Pacific Trial Attorneys
        4100 Newport Place Drive, Suite 800
        Newport Beach, CA 92660
        Phone: (949) 706-6464
        Fax: (949) 706-6469
        sferrell@pacifictrialattorneys.com
        vknowles@pacifictrialattorneys.com

        *Counsel for Plaintiff*